# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 19, 2016          Decided July 15, 2016

No. 15-1205

BP ENERGY COMPANY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

DOMINION COVE POINT LNG, LP, ET AL.,
INTERVENORS

On Petition for Review of Orders of
the Federal Energy Regulatory Commission

*Erika Maley* argued the cause for petitioner BP Energy Company. With her on the briefs were *Virginia A. Seitz*, *John T. Hebden*, and *Betsy R. Carr*. *William A. Williams III* entered an appearance.

*Karin L. Larson*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Robert H. Solomon*, Solicitor, and *Susanna Y. Chu*, Attorney.

*Catherine E. Stetson* argued the cause for intervenors Dominion Cove Point LNG, LP and Statoil Natural Gas, LLC.

With her on the brief were *J. Patrick Nevins*, *Sean Marotta*, and *Kirstin E. Gibbs*. *Christopher M. Heywood* entered an appearance.

Before: ROGERS, GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Petitioner BP Energy Company receives pipeline and terminal services as an import customer of the Cove Point liquefied natural gas ("LNG") facility under a contract with the facility's owner, Dominion Cove Point LNG, LP, that expires in 2023. In 2014, Dominion obtained authorization from the Federal Energy Regulatory Commission to convert the Cove Point facility from an import maritime terminal to a mixed-use, import and export terminal. *Dominion Cove Point LNG, LP*, 148 F.E.R.C. ¶ 61,244 (2014) ("2014 Authorization Order"), *on reh'g*, 151 F.E.R.C. ¶ 61,095 (2015) ("Rehearing Order"). BP Energy petitions for review of the Commission's determination that Dominion did not act in an unduly discriminatory manner under section 3(e)(4) of the Natural Gas Act ("NGA"), 15 U.S.C. § 717b(e)(4), when it agreed to shorten the contract term of a non-open access customer's terminal services contract, Statoil Natural Gas, LLC, without offering a corresponding "turn back" option to open access customers such as BP Energy. The Commission ruled that turn back opportunities are outside the scope of NGA § 3(e)(4)'s undue discrimination provision and that BP Energy and Statoil are not similarly situated because BP Energy receives terminal services under NGA § 7 while Statoil receives terminal services under NGA § 3. *See* 2014 Authorization Order, ¶¶ 45-48; Rehearing Order ¶¶ 6-17. For the following reasons, we remand the case to the Commission for further explanation.

3

**I**.

Prior to 2002, the providers of both LNG terminal services and interstate natural gas pipeline services were regulated under NGA § 7, 15 U.S.C. § 717f, and were traditionally required to do so at cost-of-service rates and under open access terms of service. In 2002, upon determining that the traditional approach may have had the unintended effect of deterring new investment, the Commission announced a "less intrusive" regulatory regime for LNG terminals under NGA § 3. *Hackberry LNG Terminal, LLC*, 101 F.E.R.C. ¶ 61,294 at P 22 (2002). This approach was effectively codified by the Energy Policy Act of 2005. As amended, NGA § 3 provides that the Commission, before January 1, 2015, "shall not . . . condition an order on . . . a requirement that the LNG terminal offer service to customers other than the applicant"; "any regulation of the rates, charges, terms, or conditions of service of the LNG terminal"; or "a requirement to file with the Commission schedules or contracts related to the rates, charges, terms, or conditions of service of the LNG terminal." 15 U.S.C. § 717b(e)(3)(B)(ii). As a result, LNG terminals are no longer required to offer open access terminal services at cost-based rates and instead may contract with customers for terminal services based on market-based rates. It also provides protections for existing customers receiving service under NGA § 7 against cost-shifting, degradation of service, and undue discrimination. *See* NGA § 3(e)(4), 15 U.S.C. § 717b(e)(4). Under NGA § 7, in turn, the Commission remains responsible for ensuring that the rates at which facilities provide terminal services to open access customers and other services, such as pipeline services, are just and reasonable, do not reflect "any undue preference or advantage," and are publicly disclosed in the facility's tariff. *Id.* § 717c. Service providers must include certain terms and conditions in their tariffs, including mechanisms that allow certain customers to release their contracted-for interstate

pipeline services and transfer them to other parties, *see* 18 C.F.R. § 284.8, or extend existing arrangements past the end of their current contract, *see id.* § 284.221(d)(2)(ii).

At issue here is the turn back of service opportunity that Dominion offered Statoil in 2012 in connection with its Cove Point conversion project. By way of background, the Cove Point facility was originally constructed as an LNG import terminal consisting of a maritime terminal in Maryland and a dedicated pipeline from the terminal to interstate connections in Virginia. *See EarthReports v. FERC*, No. 15-1127 (D.C. Cir. 2016). In 2001, after a period of dormancy, the Commission authorized Cove Point to resume LNG imports. *See Cove Point LNG Ltd. Partnership*, 97 F.E.R.C. ¶ 61,043, 61,192 (2001). BP Energy was one of three customers that contracted for both LNG terminal services and related pipeline services under traditional NGA § 7 cost-of-service rates. *See id.* at 61,193. In 2006, the Commission authorized the expansion of Cove Point's terminal and pipeline service capacity with Statoil as the sole expansion customer. *See Dominion Cove Point LNG, LP*, 115 F.E.R.C. ¶ 61,337 at PP 9-15 (2006) ("2006 Authorization Order"). The Commission allowed Dominion to provide terminal services to Statoil at market rates under NGA § 3 while providing cost-of-service rates to its existing customers under NGA § 7. *See id.,* ¶¶ 106-11. Statoil also contracted for pipeline services at NGA § 7 cost-of-service rates. *See id.*, ¶ 23. Pursuant to a settlement agreement with Cove Point's existing customers, Dominion amended section 30 of the general terms and conditions of Cove Point's tariff regarding how NGA § 3 and NGA § 7 customers would receive terminal services, which the Commission found adequate to ensure that "there will be no undue discrimination against the existing [NGA § 7] customers as to their terms and conditions of service in the critical tariff areas, such as nominations, scheduling and operating conditions." *Id.*, ¶ 150.

In 2012, Dominion held a "reverse open season" that extended the opportunity to turn back contracted-for pipeline services to its NGA § 7 pipeline customers in order to free up pipeline capacity in support of the proposed conversion project. After receiving no requests, Dominion negotiated an agreement with Statoil to turn back the entirety of its NGA § 7 pipeline and NGA § 3 terminal services.

BP Energy filed a protest to the turn back agreement on the ground it was unduly discriminatory because it allowed Statoil to turn back both pipeline and terminal services, an opportunity not extended to other customers during the reverse open season. Relinquishing only its contracted-for pipeline services, BP Energy argued, would have left it paying for terminal services that were worthless without the ability to transport natural gas to or from the terminal through the pipeline. The Commission concluded that the turn back agreement was not unduly discriminatory under NGA § 3(e)(4) because it did not change the terms and conditions of terminal services for BP Energy and because BP Energy and Statoil were not similarly situated. *See* 2014 Authorization Order, ¶¶ 46-47. BP Energy sought rehearing, reiterating its earlier arguments and claiming that it was similarly situated to Statoil because both faced comparable market risks notwithstanding the different regulatory regimes under which they received Cove Point terminal services. The Commission granted rehearing and affirmed its conclusion that the turn back agreement was outside the scope of NGA § 3(e)(4)'s undue discrimination provision and added that BP Energy and Statoil were not similarly situated because of statutory and regulatory protections applicable to BP Energy but not Statoil. *See* Rehearing Order, ¶¶ 10–15. BP Energy petitions for review of the Commission's orders declining to order Dominion to offer it a full turn back opportunity.

**II**.

As a threshold matter, the Commission maintains that BP Energy lacks standing under Article III of the Constitution, which is required for the court to consider its petition for review. In the Commission's view, the injury BP Energy claims to have suffered — the more than $25 million a year that BP Energy asserts it will have to pay for the services that it should be allowed to turn back, *see* Pet'r's Br. 24 — is simply the result of BP Energy's contract with Dominion, not the Commission's orders. Further, the Commission suggests that BP Energy does not attempt to show it will suffer any competitive harm or other adverse impact as a result of Statoil's early contract termination. BP Energy responds that the Commission's failure to enforce its statutory right not to be unduly discriminated against is the cause of its economic harm due to its inability to turn back its contracted-for terminal services and that competitive harm need not be shown. We agree that BP Energy has standing.

To establish Article III standing, BP Energy must "demonstrate that [it] has suffered injury in fact, that the injury is fairly traceable to the actions of [the Commission], and that the injury will likely be redressed by a favorable decision.'" *Ne. Energy Associates v. FERC*, 158 F.3d 150, 153 (D.C. Cir. 1998) (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (internal citations and quotations omitted)); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The court "assum[es] during the standing inquiry that [BP Energy] will eventually win the relief [it] seeks[,]" *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 n.1 (D.C. Cir. 1996), and thus accepts BP Energy's interpretation of NGA § 3(e)(4) as correct, *see Parker v. District of Columbia*, 478 F.3d 370, 376-77 (D.C. Cir. 2007).

BP Energy's standing is "self-evident." *Sierra Club v. EPA*, 292 F.3d 895, 899-900 (D.C. Cir. 2002). The challenged orders

injured BP Energy by depriving it of an opportunity to turn back underutilized services it values at $25 million annually. *See Ne. Energy Associates*, 158 F.3d at 153-54; *Scheduled Airlines Traffic Offices, Inc. v. Dep't of Def.*, 87 F.3d 1356, 1358-59 (D.C. Cir. 1996). By not ordering Dominion to offer it a turn back opportunity similar to that extended to Statoil, the Commission failed to enforce its statutory right to non-discriminatory treatment under a colorable interpretation of NGA § 3(e)(4), causing BP Energy's injury. *See Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 619 (D.C. Cir. 2006). Moreover, even assuming a showing of competitive injury is necessary, the Commission does not dispute that the 2012 turn back agreement granted a valuable right to Statoil, which BP Energy views as a competitor, such that failing to offer BP Energy a corresponding right causes it competitive harm. *See United Transp. Union v. ICC*, 891 F.2d 908, 912 n.7 (D.C. Cir. 1989). Granting the petition on the Commission's determination that the turn back agreement was not unduly discriminatory would provide BP Energy with a remedy because the Commission could change its position on remand. This is sufficient to establish standing. *See Ne. Energy Associates*, 158 F.3d at 153-54. The fact that BP Energy has not provided evidence of its valuation of that opportunity is irrelevant; the Commission does not deny that the turn back opportunity has value and the deprivation of the turn back opportunity for those services constitutes an injury-in-fact regardless of that opportunity's precise monetary value.

**III.**

In the challenged orders, the Commission identified two grounds for rejecting BP Energy's undue discrimination claim. Both hinge on its interpretation of NGA § 3(e)(4), which provides:

An order issued for an LNG terminal that also offers service to customers on an open access basis shall not result in subsidization of expansion capacity by existing customers, degradation of service to existing customers, or undue discrimination against existing customers as to their terms or conditions of service at the facility, as all of those terms are defined by the Commission.

15 U.S.C. § 717b(e)(4). First, the Commission interpreted "terms or conditions of service at the facility" as limited to "operational requirements," 2014 Authorization Order, ¶ 46, including "critical tariff areas, such as nominations, scheduling and operating conditions," Rehearing Order, ¶ 14, which does not include contract termination. Second, as an alternative ground, the Commission interpreted "undue discrimination" to apply only to similarly situated customers and found that BP Energy and Statoil are not similarly situated because they receive terminal service subject to different regulatory schemes that provide different protections. *See* 2014 Authorization Order, ¶ 47 & n.54; Rehearing Order, ¶ 13. It maintains that, because NGA § 3(e)(4) leaves such terms undefined and expressly delegates interpretive authority, its interpretation of NGA § 3(e)(4) is reasonable and subject to a deferential standard of review. *See Chevron U.S.A., Inc v. NRDC, Inc.*, 467 U.S. 837, 842-44 (1984); *see also City of Arlington v. FCC*, 133 S. Ct 1863, 1868 (2013).

BP Energy contends that the Commission's interpretation of undue discrimination is contrary to the clear text of NGA § 3(e)(4) and unreasonable in light of the provision's purpose. In its view, the Commission's conclusion that BP Energy and Statoil are not similarly situated for purposes of being treated equivalently renders the provision "all but meaningless," Pet'r's Br. 22. Further, it maintains that the Commission failed to

consider significant factors, in particular whether Statoil has protections under its contract with Dominion that are equivalent to the regulatory protections for open access customers like it. Insofar as the Commission concluded that BP Energy and Statoil receive "fundamentally the same service" from Dominion, Pet'r's Br. 29 (internal quotation omitted), BP Energy contends that the Commission provided no reasoned basis for concluding that BP Energy and Statoil are not similarly situated with regard to the critical right to turn back terminal service when they are similarly situated with regard to other critical tariff areas.

Doubtless this court's review of whether the Commission's determination not to order Dominion to offer BP Energy a full turn back opportunity was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and thus must be "h[e]ld unlawful and set aside," 5 U.S.C. § 706(2), is deferential. Nonetheless the Commission's actions must be "rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983). Necessarily, this requires an agency to "articulate a satisfactory explanation for its action[s][,]" *id.* at 43, including its statutory interpretation, *see Northpoint Tech., Ltd. v. FCC*, 412 F.3d 145, 151 (D.C. Cir. 2005). Where an explanation is lacking or inadequate, the court must remand for an adequate explanation of the agency's decision and policy. *See Maher Terminals LLC v. Fed. Mar. Comm'n*, 816 F.3d 888, 892 (D.C. Cir. 2016).

In authorizing the Cove Point conversion project, the Commission concluded there was no undue discrimination in part because "Dominion has not proposed to change the terms and conditions of service for BP [Energy]" and "[t]he operational requirements contained in section 30 of Dominion's tariff will continue to ensure no discriminatory treatment of

service." 2014 Authorization Order, ¶ 46. Section 30 of the general terms and conditions of Dominion's tariff address how NGA § 3 and NGA § 7 customers were to receive open access terminal services by generally providing for equal treatment between NGA § 3 and NGA § 7 customers in matters relating to timing, nominations, and storage, but does not address turn back opportunities. *See* 2006 Authorization Order, ¶¶ 15-19, 148-51. On rehearing, the Commission similarly concluded that "there is no reason to revise Dominion's tariff to address alleged discrimination" because "the terminal service that [BP Energy] receives from Dominion is fundamentally the same as that provided to Statoil[,]" which "receives no preference in nominating, scheduling, or the quality of the terminal service provided." Rehearing Order, ¶ 14.

To the extent BP Energy suggests that the court cannot affirm the Commission on the basis of its "operational" interpretation of NGA § 3(e)(4) because it is a post-hoc rationalization on which the Commission did not rely in the challenged orders, it is unavailing. Interpreting NGA § 3(e)(4)'s undue discrimination requirement to apply only to "critical tariff areas, such as nominations, scheduling and operating conditions" as covered by section 30, *see* 2006 Authorization Order, ¶ 150, is necessary to these conclusions and "may reasonably be discerned" from the challenged orders, *Casino Airlines, Inc. v. NTSB*, 439 F.3d 715, 717 (D.C. Cir. 2006) (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974)). The Commission, therefore, is not barred from relying on this interpretation.

BP Energy's contention that the Commission's interpretation of "terms or conditions of service at the facility" is an unreasonable reading of the clear text of NGA § 3(e)(4) is not so readily dismissed. The Commission's interpretation of the scope of NGA § 3(e)(4)'s protection against undue

discrimination may prove to be permissible, *see Chevron*, 467 U.S. at 843, but the Commission has not adequately explained why this is so in the turn back context at issue. The explanation "need not be a model of clarity," *Casino Airlines*, 439 F.3d at 717, but the challenged orders do not provide an indication of the reasoning behind this interpretation. The 2014 Authorization Order quotes NGA § 3(e)(4) but makes no "reasonable attempt to grapple" with or even refer back to the statutory text. *Council for Urological Interests v. Burwell*, 790 F.3d 212, 223 (D.C. Cir. 2015). Nor does the Commission identify factors underlying its interpretation that are "rationally related to [NGA § 3(e)(4)'s] purpose[,]" *Petit v. U.S. Dep't of Educ.*, 675 F.3d 769, 787 (D.C. Cir. 2012), or "other considerations [that] it believe[s] counsel[] in favor of its interpretation[,]" *Village of Barrington v. Surface Transp. Bd.*, 636 F.3d 650, 666 (D.C. Cir. 2011). Instead, the challenged orders assume this to be the true meaning of NGA § 3(e)(4), and do not even acknowledge that the Commission is engaging in interpretation.

The sole citation offered by the Commission in support of its interpretation does not fill the gap. *See ACS of Anchorage, Inc. v. FCC*, 290 F.3d 403, 408-09 (D.C. Cir. 2002). On rehearing, the Commission cited the 2006 Authorization Order as having concluded that "section 30 was adequate to prevent undue discrimination[,]" and quoted it as saying: "'[W]e are satisfied that there will be no undue discrimination against the existing . . . customers as to their terms and conditions of service in the critical tariff areas, such as nominations, scheduling and operating conditions.'" Rehearing Order, ¶ 14 (quoting 2006 Authorization Order, ¶ 150). The 2006 Authorization Order, however, provides no explanation of why NGA § 3(e)(4)'s bar on undue discrimination in the "terms or conditions of service at the facility[,]" 15 U.S.C. § 717b(e)(4), should be interpreted in a manner that it is satisfied by the Commission's finding that there is no discrimination in the "terms and conditions of service

in the critical tariff areas[,]" Rehearing Order, ¶ 14. Further, the Commission approved section 30 in part because the parties involved in the 2006 Cove Point expansion project had agreed to its terms as part of a settlement agreement, a context in which the Commission and the court have expressed their willingness to accept certain discrepancies that might otherwise be unduly discriminatory. *See Cities of Bethany v. FERC*, 727 F.2d 1131, 1139-40 (D.C. Cir.), *cert denied*, 469 U.S. 917 (1984). And while the 2006 decision discusses a reverse open season that resulted in the turn back of certain services by NGA § 7 customers, *see* 2006 Authorization Order, ¶¶ 30-31, it does not address the situation where a turn back opportunity is extended to a NGA § 3 customer but not NGA § 7 customers. Even read as the Commission suggests, it is unclear why the 2006 Authorization Order would be relevant here.

To the extent the Commission attempts to counter BP Energy's contention on the ground that it has failed to explain how contract termination is a "term[] or condition[] of service at the facility[,]" *see* Resp't's Br. 73 (quoting 15 U.S.C. § 717b(e)(4)), it misunderstands its burden. *See State Farm*, 463 U.S. at 43. The Commission has at times appeared to categorize turn back and similar opportunities as terms and conditions of service for the purpose of other NGA provisions. *See, e.g.*, *E. Tenn. Nat. Gas, LLC*, 117 F.E.R.C. ¶ 61,016 at PP 9-12 (2006); *Tenn. Gas Pipeline Co.*, 97 F.E.R.C. ¶ 61,225, 62,029-30 (2001); *Nat. Gas Pipeline Co. of Am.*, 76 F.E.R.C. ¶ 61,142, 61,788 (1996). And in relation to Cove Point, the Commission has suggested in other contexts that such opportunities cannot be offered in an unduly discriminatory manner. *See Dominion Cove Point LNG, LP*, 134 F.E.R.C. ¶ 61,219 at PP 15-16 (2011); *Dominion Cove Point LNG, LP*, 119 F.E.R.C. ¶ 61,209 at P 3 (2007). That the Commission, not BP Energy, bears the burden of explaining its interpretation of NGA § 3(e)(4) is underscored in view of its precedent.

Regardless of the additional explanations offered in appellate briefs by the Commission and intervenors Dominion and Statoil why the Commission's interpretation of NGA § 3(e)(4) is reasonable, the court "must judge the propriety of [the Commission's] action solely by the grounds invoked by the agency" and cannot "affirm the administrative action by substituting what it considers to be a more adequate or proper basis" without "propel[ling itself] into the domain which Congress has set aside exclusively for the administrative agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *see also Council for Urological Interests*, 790 F.3d at 222. Because the Commission failed to provide an adequate explanation of its interpretation of NGA § 3(e)(4)'s scope in the challenged orders, the court cannot deny the petition on this ground.

The Commission maintains, however, that its refusal to order Dominion to offer BP Energy a full turn back opportunity should be affirmed on the alternate ground that BP Energy and Statoil are not similarly situated because BP Energy receives greater regulatory protections as an NGA § 7 customer than does Statoil as an NGA § 3 customer. In the 2014 Authorization Order, the Commission stated that it interprets "undue discrimination" in NGA § 3(e)(4) to mean that "not all discrimination is undue, and only similarly situated customers need to be treated similarly." 2014 Authorization Order, ¶ 47. As support, it cited precedent affirming its interpretation of undue discrimination clauses in other statutes that it enforces, implying that it interprets NGA § 3(e)(4) similarly. *See id.* n.54 (citing *Associated Gas Distrib. v. FERC*, 824 F.2d 981, 1009 (D.C. Cir. 1987), *cert. denied sub nom. Interstate Nat. Gas Ass'n v. FERC*, 485 U.S. 1006 (1988); *Cities of Bethany*, 727 F.2d at 1139). Under precedent relating to such provisions, petitioners making an undue discrimination claim "must demonstrate not only differential [treatment] between two classes of customers but also that the two classes of customers are similarly situated

for purposes of the [treatment]." *Wash. Water Power Co. v. FERC*, 201 F.3d 497, 504 (D.C. Cir. 2000) (internal quotation omitted). No undue discrimination exists where there is "a rational basis for treating [two entities] differently" and such differential treatment is "'based on relevant, significant facts which are explained.'" *Complex Consol. Edison Co. of N.Y., Inc. v. FERC*, 165 F.3d 992, 1012-13 (D.C. Cir. 1999) (quoting *TransCanada Pipelines Ltd. v. FERC*, 878 F.2d 401, 413 (D.C. Cir. 1989)). Nor is disparate treatment in such circumstances arbitrary and capricious. *See TransCanada*, 878 F.2d at 413.

Applying this standard, the Commission noted in the 2014 Authorization Order that BP Energy "receiv[es] open access terminal services provided under [NGA § 7], while Statoil is an expansion customer receiving non-open access service under [NGA § 3]." 2014 Authorization Order, ¶ 47. Because these regulatory regimes are "distinguishable[,]" the Commission concluded that "BP [Energy] and Statoil are not similarly situated" for the purposes of NGA § 3(e)(4)'s undue discrimination provision. *Id.* On rehearing, the Commission added that, "[w]hile BP [Energy] and Statoil may face the same risk that the market for imported natural gas might change, as an open access customer, BP [Energy] has protections not afforded Statoil." Rehearing Order, ¶ 13. The Commission noted that under NGA § 7, BP Energy has "a regulatory right to release all or a portion of its terminal service to another shipper" and "regulatory rights regarding retention of its capacity upon expiration of its initial service agreement." *Id.* Further, the Commission observed that "[t]he fact that market conditions might render these rights more or less valuable to BP [Energy] at any given point in time does not negate the fact that they exist." *Id.*

We do not understand the Commission to mean that BP Energy and Statoil are not similarly situated strictly because one

receives terminal services pursuant to NGA § 3 while the other does so pursuant to NGA § 7, for that would come close to depriving NGA § 3(e)(4)'s protection against undue discrimination of any legal effect. *See Clark v. Rameker*, 134 S. Ct. 2242, 2248-49 (2014). By its plain text, NGA § 3(e)(4)'s undue discrimination protection applies only where an LNG terminal that is being authorized to provide services to new customers under NGA § 3 "also offers service to customers on an open access basis" under NGA § 7 and pursues differential treatment between the two. 15 U.S.C. § 717b(e)(4). If the fact that one customer receives services under NGA § 3 and the other does so under NGA § 7 was alone sufficient to render any disparate treatment not unduly discriminatory, then NGA § 3(e)(4)'s protection against undue discrimination for an existing customer in a mixed terminal would never actually bar differential treatment. Even under the most deferential standard, an agency cannot read statutory provisions out of existence but must interpret statutes "so that effect is given to all its provisions . . . [and] no part will be inoperative or superfluous, void or insignificant . . . ." *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotation omitted).

Rather, we understand the Commission to conclude that BP Energy and Statoil are not similarly situated because of the specific "protections not afforded Statoil" that BP Energy receives under NGA § 7, such as release and retention of contracted-for terminal services. Rehearing Order, ¶ 13. Even assuming that the Commission has established such protections are "significant" and "relevant[,]" the Commission has not adequately explained why they provide a "rational basis" for permitting the 2012 turn back agreement only to Statoil. *Complex Consol. Edison Co.*, 165 F.3d at 1012-13. If the reasonable inference from the challenged orders is that the turn back opportunity is intended to compensate for the open access protections provided to BP Energy but not Statoil by NGA § 7,

then the Commission has not so far demonstrated that Statoil does not receive the same or comparable benefits under its contract with Dominion. The Commission acknowledges that it did not review the Statoil contract, and states now that the contract terms are "irrelevant" to its determination that BP Energy and Statoil are not similarly situated, Resp't's Br. 79-80. Maybe so, but the Commission has not explained why. Knowing whether the terms of Statoil's contract provide protections comparable to those afforded customers under NGA § 7 — if that is in fact the basis for the Commission's decision — does not, on this record, appear "irrelevant." For example, Statoil's contract with Dominion could guarantee release and retention rights identical to those provided under NGA § 7. For purposes of the turn back agreement at issue, there then would appear to be little to no practical difference in the protections available to each, aside from their source (i.e., a negotiated contract versus regulatory requirements under NGA § 7). If the difference in regulatory regimes is relevant in a manner that would not render NGA § 3(e)(4)'s undue discrimination provision self-defeating — perhaps, for example, that Statoil negotiated for its protections while BP Energy did not have to, or that Statoil was a "foundation shipper" for the 2006 expansion project — the Commission would have had to explain this in the challenged orders. *See Council for Urological Interests*, 790 F.3d at 222. Because the Commission failed to do so, the court must remand for further explanation.

Finally, Dominion and Statoil's suggestion that BP Energy is barred from relying on the Commission's failure to analyze Statoil's contract is unavailing. BP Energy did not make this objection before the Commission as would usually be required by NGA § 19, 15 U.S.C. § 717r(b), but does so here in response to the Commission's identification, for the first time on rehearing, of the "protections not afforded Statoil" in support of its decision not to order Dominion to offer BP Energy a full turn

back opportunity. Rehearing Order, ¶ 13. Under the circumstances, BP Energy has "reasonable ground[s]" for having failed to raise this objection earlier. *See Columbia Gas Transmission Corp. v. FERC*, 477 F.3d 739, 742 (D.C. Cir. 2007) (quoting *S. Nat. Gas Co. v. FERC*, 877 F.2d 1066, 1072 (D.C. Cir. 1989) (quoting 15 U.S.C. § 717r(b))).

Accordingly, we remand the case to the Commission for further explanation of why the 2012 turn back agreement between Dominion and Statoil was not unduly discriminatory as to BP Energy under NGA § 3(e)(4). Although we need not reach BP Energy's contention that the agreement was an impermissible "sweetheart deal," Pet'r's Br. 38-41, the Commission may also wish to consider and explain on remand the extent to which such a deal is relevant to the undue discrimination analysis.