# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 10, 2024        Decided June 13, 2025

No. 23-1236

KIMBALL WIND, LLC,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

AMERICAN PUBLIC POWER ASSOCIATION, ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*John P. Coyle* argued the cause for petitioner. With him on the briefs was *Ashley M. Bond*.

*Susanna Y. Chu*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Matthew R. Christiansen*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Casen B. Ross*, Attorney, U.S. Department of Justice, argued the cause for intervenor Western Area Power Administration in support of respondent. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Melissa N. Patterson*, Attorney.

*John E. McCaffrey* and *Jonathan D. Schneider* were on the brief for intervenors American Public Power Association and Large Public Power Council in support of respondent.

Before: HENDERSON and CHILDS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* CHILDS.

CHILDS, *Circuit Judge*: Kimball Wind, LLC, operates a wind facility in Nebraska that generates electricity transmitted on a network owned and operated by the Western Area Power Administration (WAPA). Before Kimball Wind's facility began its operations, WAPA determined that a substation expansion was necessary to ensure the network could safely and reliably transmit the facility's electricity output. WAPA offered to cover part of the expansion costs but required that Kimball Wind commit to pay the rest. Kimball Wind agreed under protest, believing that WAPA wrongfully made it responsible for most of the expansion costs.

Kimball Wind petitioned the Federal Energy Regulatory Commission (the Commission) for an order, pursuant to section 211A of the Federal Power Act (FPA), directing WAPA to reimburse Kimball Wind's contribution to the substation expansion. The Commission determined that section 211A does not provide for the relief sought by Kimball Wind. We agree. Kimball Wind did not seek an order for

transmission services—the sole form of relief provided by section 211A. Accordingly, we deny the petition for review.

**I.**

**A.**

Transmission lines play an important role in the electric grid, moving electricity produced by generators across long distances to reach consumers. To maintain open access to transmission lines, sections 205 and 206 of the FPA authorize the Commission to regulate the transmission services provided by certain utilities, 16 U.S.C. § 824e(a), to ensure that they are provided at just, reasonable and non-discriminatory rates, *id.* § 824d(a)–(b). But not all transmission utilities fall within the Commission's authority under sections 205 and 206. Entities of the federal government that own and operate transmission lines, for example, are outside the scope of those sections. *See id.* § 824(f).

To address this gap, the Energy Policy Act of 2005 added section 211A to the FPA. Section 211A gives the Commission jurisdiction over "unregulated transmitting utilities," which include agencies, authorities, or instrumentalities of the United States that "own[] or operate[] facilities used for the transmission of electric energy in interstate commerce." *Id.* §§ 824(f), 824j-1(a)–(b). WAPA is an unregulated transmitting utility, as it is an entity within the U.S. Department of Energy that owns and operates a transmission network over fifteen states.

The Commission's statutory authority over unregulated transmitting utilities, however, is limited. Because unregulated transmitting utilities may provide transmission services to themselves and other customers, section 211A is "designed to

foster an open and competitive energy market by promoting access to transmission services on equal terms." *Nw. Requirements Utils. v. FERC*, 798 F.3d 796, 808 (9th Cir. 2015). Accordingly, under section 211A, the Commission may only order an unregulated transmitting utility to "provide transmission services," "(1) at rates that are comparable to those that the unregulated transmitting utility charges itself; and (2) on terms . . . that are comparable to those under which the unregulated transmitting utility provides transmission services to itself and that are not unduly discriminatory or preferential." 16 U.S.C. § 824j-1(b).

Section 211A grants the Commission discretionary authority. *S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41, 95–96 (D.C. Cir. 2014) (explaining that "section 211A plainly permits, but does not mandate, the Commission to require [an unregulated transmitting utility] to provide transmission service on given terms"). The Commission has seen fit to issue an order pursuant to section 211A only once, then providing prospective relief and stressing that it "expect[ed] that the need to use this statutory authority would be rare." *Iberdrola Renewables, Inc.*, 137 FERC ¶ 61,185, ¶ 32 (2011).

**B.**

The dispute in this case stems from a long-running project to develop wind-based electricity generation in Nebraska. In 2016, the Municipal Energy Agency of Nebraska (MEAN) requested proposals to upgrade an existing wind generation facility. MEAN selected Kimball Wind's proposal to develop an upgraded facility ("the Kimball Wind Farm"). MEAN and Kimball Wind then entered into a power purchase agreement, where MEAN would purchase the Kimball Wind Farm's electricity output for twenty years and the Kimball Wind Farm would deliver electricity by June 2018. To begin delivering its

electricity output, the Kimball Wind Farm had to connect to WAPA's transmission network.

WAPA transmits electricity for MEAN pursuant to a transmission services agreement. As required by that agreement, MEAN requested that WAPA transmit the Kimball Wind Farm's electricity output, which would be delivered through the Kimball Substation, and then along a long-distance transmission line, the Archer-Sidney Line.[1]

In considering MEAN's request, WAPA carried out preliminary studies to assess whether any changes to the network's infrastructure were necessary to safely and reliably transmit the Kimball Wind Farm's electricity output. WAPA's studies concluded that adding the Kimball Wind Farm's output to WAPA's transmission network would "cause an overall degradation in protective coverage for the Archer-Sidney . . . line," and recommended expanding the Kimball Substation "with a four breaker ring bus." J.A. 72. WAPA estimated that the overall cost for the substation expansion would be about $6.5 million.

The question then became who would pay for the substation expansion. WAPA offered to contribute $2.2 million, and proposed that MEAN pay the rest. MEAN declined and notified WAPA that it would not be a party to any agreement regarding the substation expansion. Facing an impending deadline to begin delivering electricity, Kimball Wind agreed under protest to be responsible for the remaining costs. Kimball Wind ultimately paid around $5.9 million. Kimball Wind then turned to the Commission for relief.

---

[1] The Kimball Wind Farm is connected to a substation owned by the City of Kimball, which in turn is connected to the Kimball Substation by a transmission line owned by the City of Kimball.

6

## C.

Kimball Wind petitioned the Commission for an order, pursuant to section 211A, directing WAPA to reimburse Kimball Wind's contribution to the substation expansion. In May 2023, the Commission issued an order denying the petition. As a threshold matter, the Commission found that Kimball Wind could file a petition because section 211A does not limit who can seek an order. The Commission determined, however, that the relief Kimball Wind requested was not appropriate under section 211A, because: (1) Kimball Wind did not seek an order for transmission services; (2) Kimball Wind was not WAPA's transmission service customer; and (3) even if section 211A authorized a reimbursement, Kimball Wind did not provide any evidence it received non-comparable transmission service from WAPA or explain how the requested relief would remedy such non-comparable service.

Kimball Wind then filed a request for rehearing, arguing that the order was internally inconsistent by finding that Kimball Wind could file a petition but could not obtain relief under section 211A, and that the order departed from Commission precedent without explanation and was unsupported by substantial evidence. The Commission denied Kimball Wind's request for rehearing. Kimball Wind filed this consolidated petition for review of the Commission's orders. WAPA, the American Public Power Association, and Large Public Power Council intervened.

## II.

## A.

We have jurisdiction to review the Commission's final orders. 16 U.S.C. § 825*l*(b).[2] We review the Commission's orders under the Administrative Procedure Act's arbitrary, capricious, or contrary to law standard. *See* 5 U.S.C. § 706(2)(A); *LSP Transmission Holdings II, LLC v. FERC*, 45 F.4th 979, 991 (D.C. Cir. 2022) (applying the APA's arbitrary-and-capricious standard to review actions under the FPA). "[W]hen addressing a question of statutory interpretation, we begin with the text," and apply "the traditional tools of statutory construction." *Pac. Gas & Elec. Co. v. FERC*, 113 F.4th 943, 948 (D.C. Cir. 2024) (quotations omitted).

**B.**

The key question before us is whether section 211A authorizes the Commission to issue an order directing WAPA to reimburse Kimball Wind for its contribution to the substation expansion. We agree with the Commission that Kimball Wind does not seek an order for transmission services—the only type of order the Commission may issue under section 211A.[3] Because the Commission's orders can be

---

[2] Neither the Tucker Act nor the Contracts Dispute Act limit our jurisdiction over Kimball Wind's petition, because "at its essence" this case does not turn on a contractual dispute, *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982), and turns instead on the scope of the Commission's authority under section 211A, *see Crowley Gov't Servs, Inc. v. GSA*, 38 F.4th 1099, 1106 (D.C. Cir. 2022).

[3] Although section 211A does not provide for the relief Kimball Wind seeks, Kimball Wind has still shown that its claimed injury—the Commission's denial of a reimbursement order—is redressable for purposes of Article III standing. "[D]uring the standing inquiry," the Court "accepts [petitioner's statutory] interpretation . . . as correct." *B.P. Energy Co. v. FERC*, 828 F.3d 959, 963 (D.C. Cir. 2016) (quotations and citations omitted). Assuming that Kimball

sustained on that determination alone, we do not address its other reasons for declining Kimball Wind's petition. *See Williams Gas Processing-Gulf Coast Co., L.P. v. FERC*, 475 F.3d 319, 330 (D.C. Cir. 2006).

Pursuant to section 211A, the Commission may only order "an unregulated transmitting utility to provide transmission services" on comparable terms and rates. 16 U.S.C. § 824j-1(b). Kimball Wind seeks an order for a reimbursement, either as a cash payment from WAPA or a three-party rate-crediting agreement between WAPA, MEAN, and Kimball Wind. Kimball Wind contends that an order instructing WAPA to reimburse it for its contribution to the substation expansion is an order to "provide transmission services." We are not persuaded.

*First*, Kimball Wind's request for a direct cash refund from WAPA would not result in an order for transmission services. Kimball Wind acknowledges that the only relief it seeks is "the refund of [its] construction costs." Oral Arg. Tr. 12:18–20. It does not seek a transmission services agreement with WAPA, and it is not currently a party to such an agreement. An order directing WAPA to reimburse Kimball Wind with a cash refund would neither require that WAPA provide transmission services to Kimball Wind nor modify the terms on which WAPA provides transmission services to any other party. *Cf. Iberdrola Renewables,* 137 FERC ¶ 61,185, ¶ 30 (ordering an unregulated transmission utility to prospectively modify the terms and conditions on which it provides transmission services).

Wind will prevail in its argument that section 211A authorizes the Commission to grant the reimbursement it seeks, a favorable ruling from this Court would redress its injury.

*Second*, Kimball Wind's request for a three-party rate-crediting agreement would not result in an order for transmission services. Under Kimball Wind's proposed three-party rate-crediting agreement, WAPA would adjust the rate it charges MEAN for transmitting electricity, and MEAN would then use this rebate to reimburse Kimball Wind. The order Kimball Wind seeks thus would direct WAPA to grant MEAN rate credits and MEAN to reimburse Kimball Wind. Such an order would not direct WAPA or MEAN to provide transmission services to Kimball Wind.

On Kimball Wind's petition, neither an order for a cash refund nor an order for a three-party rate-credit agreement would "require an unregulated transmitting utility to provide transmission services." 16 U.S.C. § 824j-1(b). The Commission, therefore, correctly concluded that Kimball Wind seeks relief that section 211A cannot provide.

## C.

Kimball Wind also contends that the Commission's orders are arbitrary and capricious, because they are internally inconsistent or because they are an unreasonable and unjustified departure from Commission precedent and policy disfavoring direct assignment of network upgrade costs. We do not reach these questions in light of our preceding conclusion that the Commission lacks statutory authority under section 211A to order that WAPA reimburse Kimball Wind. And Kimball Wind identifies no other independent statutory basis for the reimbursement it seeks.

## III.

For the foregoing reasons, we deny the petition for review.

*So ordered.*