# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 9, 2012         Decided April 13, 2012

No. 11-1269

MANUFACTURERS RAILWAY COMPANY,
PETITIONER

v.

SURFACE TRANSPORTATION BOARD AND UNITED STATES OF
AMERICA,
RESPONDENTS

On Petition for Review of an Order
of the Surface Transportation Board

*Paul A. Cunningham* argued the cause for petitioner. With him on the briefs was *Richard B. Herzog*.

*Virginia Strasser*, Attorney, Surface Transportation Board, argued the cause for respondents. With her on the brief were *Robert B. Nicholson* and *Robert J. Wiggers*, Attorneys, U.S. Department of Justice, *Raymond A. Atkins*, General Counsel, Surface Transportation Board, and *Evelyn G. Kitay*, Associate General Counsel, Surface Transportation Board.

Before: HENDERSON, GRIFFITH, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: To abandon or discontinue service over a railroad line, a railroad must first obtain authorization from the Surface Transportation Board. As a condition of Board authorization, the railroad must pay dismissed employees sometimes-hefty dismissal allowances. But the Board has long maintained an exception under which it does not require a railroad to pay dismissal allowances when the railroad abandons or discontinues service *over its entire system*. We will call this the Board's "entire-system exception."

Here, Manufacturers Railway Company obtained authorization from the Board to discontinue service over its entire system. But the Board did not apply its entire-system exception; instead, the Board required Manufacturers to pay dismissal allowances to its dismissed employees. We conclude that the Board did not reasonably explain and justify the departure from its longstanding entire-system exception. We thus find the Board's decision arbitrary and capricious under the Administrative Procedure Act. We grant the petition for review, vacate the Board's decision, and remand for further proceedings.

I

Congress has assigned the Surface Transportation Board – an independent federal agency – to regulate transportation by rail carriers. *See* 49 U.S.C. § 10501; *see also* 49 U.S.C. § 10102(5) ("'rail carrier' means a person providing common

carrier railroad transportation for compensation").[1] When a rail carrier seeks to abandon a railroad line or discontinue service over a railroad line, it must first obtain authorization from the Board. *See* 49 U.S.C. § 10903; 49 U.S.C. § 10502.[2] When granting authorization, the Board is required by statute to impose conditions to protect adversely affected employees. *See* 49 U.S.C. § 10903(b)(2); 49 U.S.C. § 10502(g). Of primary relevance here, the Board generally requires a railroad to pay dismissed employees their monthly salaries, referred to as "dismissal allowances," for up to six years. *See Oregon Short Line Railroad*, 360 I.C.C. 91, 98-103 (1979).

---

[1] When we use the term "rail carrier" in this opinion, we are using it as defined by the statute.

[2] "Abandon" and "discontinue" have distinct meanings in this context. In general, to "abandon" a line involves ceasing to operate a line, with no intention of resuming operation of that line. Once a line is abandoned, the Board loses jurisdiction over that line. To "discontinue" service over a line involves ceasing to operate a line for an indefinite period of time, with the option of resuming operation of that line in the future. When service over a line has been discontinued, the Board retains jurisdiction over that line. *See New York Cross Harbor Railroad v. STB*, 374 F.3d 1177, 1182 n.5 (D.C. Cir. 2004); *National Ass'n of Reversionary Property Owners v. STB*, 158 F.3d 135, 137 n.1 (D.C. Cir. 1998) (citing *Preseault v. ICC*, 494 U.S. 1, 5 n.3 (1990)); *see also* 49 C.F.R. § 1152.29(e)(2) ("A railroad that receives authority from the Board to abandon a line . . . shall file a notice of consummation with the Board to signify that it has exercised the authority granted and fully abandoned the line (e.g., discontinued operations, salvaged the track, canceled tariffs, and intends that the property be removed from the interstate rail network)."); *Consolidated Rail Corp.*, 1 I.C.C. 2d 284 (1984) (after abandonment, a railroad can operate a line in private carriage, but is not subject to Board jurisdiction).

But the Board has maintained a longstanding exception under which it does not order payment of employee dismissal allowances when a rail carrier abandons or discontinues service over its entire system. *See, e.g.*, *Wellsville, Addison & Galeton Railroad Corp.*, 354 I.C.C. 744 (1978); *Northampton & Bath Railroad Co.*, 354 I.C.C. 784 (1978). In cases of entire-system abandonment or discontinuance, the Board has reasoned that no operating rail carrier remains that could use revenue from other railroad lines to help pay the employee dismissal allowances. *See Northampton*, 354 I.C.C. at 785-86.[3]

## II

Manufacturers Railway Company operated two railroad lines in St. Louis, Missouri. Manufacturers mainly served the Anheuser-Busch brewery there. By 2010, the railroad lines had become unprofitable.

In March 2011, Manufacturers requested authorization from the Surface Transportation Board to discontinue service over the two lines, which constituted Manufacturers' entire system. Unions representing Manufacturers' employees asked the Board to order payment of employee dismissal allowances if the request was granted.

---

[3] The Board has recognized two exceptions to the entire-system exception: when there is "(1) a corporate affiliate that will continue substantially similar rail operations; or (2) a corporate parent that will realize substantial financial benefits over and above relief from the burden of deficit operations by its subsidiary railroad." *Mississippi & Skuna Valley Railroad, LLC*, No. AB 1089X, slip op. at 3 (STB Jan. 20, 2012); *see also Northampton*, 354 I.C.C. at 786. Neither exception is at issue in this case.

The Board authorized Manufacturers to discontinue service over its entire system and ordered Manufacturers to pay dismissal allowances to its dismissed employees – notwithstanding its longstanding entire-system exception. The Board reasoned the entire-system exception does not apply when "a carrier seeks an entire-system discontinuance over lines that it not only operates but also owns." *Manufacturers Railway Co.*, No. AB 1075X, slip op. at 5 (STB July 12, 2011).

Manufacturers petitioned for review in this Court, arguing that the Board departed without justification from its longstanding entire-system exception. This Court reviews Board decisions under the Administrative Procedure Act's arbitrary and capricious standard of review. *See Village of Barrington v. STB*, 636 F.3d 650, 670 (D.C. Cir. 2011); 5 U.S.C. § 706(2)(A). Put simply, the APA requires that an agency's exercise of its statutory authority be reasonable and reasonably explained. This Court will set aside agency action if, among other things, the agency "reverses its position in the face of a precedent it has not persuasively distinguished." *New York Cross Harbor Railroad v. STB*, 374 F.3d 1177, 1181 (D.C. Cir. 2004) (citation and brackets omitted).

III

A

Manufacturers argues that the Board should have applied its longstanding entire-system exception and exempted Manufacturers from payment of employee dismissal allowances.

In the past, the Board has exempted rail carriers from paying employee dismissal allowances when the carriers

abandoned or discontinued service over their entire system. The general theory behind the entire-system exception is fairly easy to explain: A company that is abandoning or discontinuing service over one line but continuing rail carrier operations on other lines can use revenue from those other lines to fund payment of the employee dismissal allowances. But a company without any continuing rail carrier operations does not have such revenue to fund the dismissal allowances. *See, e.g.*, *Northampton & Bath Railroad Co.*, 354 I.C.C. 784, 785-86 (1978); *Simmons v. ICC*, 697 F.2d 326, 336 (D.C. Cir. 1982); *Railway Labor Executives' Ass'n v. ICC*, 735 F.2d 691, 697 (2d Cir. 1984).

In this case, as in other cases where a railroad has abandoned or discontinued service over its entire system, no operating rail carrier remains to earn revenue from other lines and thereby fund the employee dismissal allowances. Therefore, this case seems to fall squarely within the rationale that the Board has long used to justify the entire-system exception. Yet the Board here rather inexplicably failed to apply the exception to Manufacturers; instead, it ordered Manufacturers to pay employee dismissal allowances on the ground that Manufacturers retained ownership of its lines. But in the past, the Board has ordered payment of employee dismissal allowances only when the company maintained rail carrier operations that would generate revenue to fund the employee dismissal allowances.[4]

---

[4] The Board also suggested that its decision to impose employee dismissal allowances on Manufacturers was justified by the fact that Manufacturers would remain subject to the Board's jurisdiction (because Manufacturers would still own the lines, among other reasons). But the key point under the Board's precedents is that Manufacturers would not be earning revenue from other rail carrier operations to fund the employee dismissal

It is true that Manufacturers remains in existence as an ongoing company, even though it no longer provides service as a rail carrier. But that has been true in other cases where the Board has applied the entire-system exception and declined to require payment of employee dismissal allowances. In other words, the Board has applied the entire-system exception not just in cases where a company was going out of business, but also in cases such as this where a company remained in business but had no ongoing rail carrier operations. So the mere fact that Manufacturers remains in business does not justify the Board's failure to apply the entire-system exception in this case. *See Sierra Pacific Industries*, No. AB-512X, slip op. at 8 (STB Feb. 25, 2005) (railroad planned to continue business as a private carrier; Board did not order employee dismissal allowances); *Almono LP*, No. AB-842X, slip op. at 2, 4 (STB Jan. 13, 2004) (railroad intended to continue business as a private carrier; Board did not order employee dismissal allowances); *Wellsville, Addison & Galeton Railroad Corp.*, 354 I.C.C. 744, 746 (1978) (railroad had business leasing boxcars; Board's predecessor agency did not order employee dismissal allowances); *see also Greenville County Economic Development Corp.*, No. AB-490 (Sub-No. 1X), slip op. at 1, 4 (STB Oct. 12, 2005) (railroad sought an entire-system discontinuance over lines that it owned; Board did not order employee dismissal allowances).[5]

To sum up, the Board failed to reasonably explain and justify its deviation from its longstanding entire-system

allowances. The fact that Manufacturers would remain subject to the Board's jurisdiction does not alter that central point.

[5] For purposes of the entire-system exception, the Board has indicated that *private* carriage – as distinguished from common carriage – does not qualify as ongoing rail carrier operations of the abandoning or discontinuing rail carrier.

exception. Under the APA, the Board's decision is therefore arbitrary and capricious. We must vacate the Board's decision.

B

Our discussion thus far has focused on whether the Board reasonably applied its entire-system exception to this case. Both Manufacturers and the Board – the parties before this Court – have assumed the validity of the entire-system exception. But several railroad worker unions also participated in this case when it was argued before the Board, and the unions questioned the validity of the entire-system exception. The unions broadly claimed that the statute does not permit the Board's entire-system exception, no matter how longstanding it might be. The statute provides: "The Board shall require as a condition of any abandonment or discontinuance under this section provisions to protect the interests of employees." 49 U.S.C. § 10903(b)(2); *see also* 49 U.S.C. § 10502(g). According to the unions, in the face of a statutory command that the Board *shall* impose employee protective conditions such as employee dismissal allowances in *any* abandonment or discontinuance, the Board has nonetheless created an exception. The unions contended that the statutory text requires employee dismissal allowances in *all* cases of abandoned or discontinued lines, and that the entire-system exception was therefore invalid. The unions prevailed before the Board on narrower grounds, and they are not parties to the case in this Court. This textual argument thus has not been presented to us.

9

\* \* \*

We grant the petition for review, vacate the Board's decision, and remand for further proceedings.

*So ordered.*