# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 13, 2020   Decided April 14, 2020

No. 19-1026

UNITED PARCEL SERVICE, INC.,
PETITIONER

v.

POSTAL REGULATORY COMMISSION,
RESPONDENT

AMAZON.COM SERVICES, INC., ET AL.,
INTERVENORS

———

On Petition for Review of an Order
of the Postal Regulatory Commission

———

*Kathleen M. Sullivan* argued the cause for petitioner. With her on the briefs was *Steig D. Olson*.

*Michael Shih*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief were *Michael S. Raab*, Attorney, *David A. Trissell*, General Counsel, Postal Regulatory Commission, *Anne J. Siarnacki*, Deputy General Counsel, and *Reese T. Boone*, Attorney.

*Eric P. Koetting* and *Morgan E. Rehrig*, Attorneys, U.S. Postal Service, *Michael F. Scanlon*, *John Longstreth*, and *James Pierce Myers* were on the brief for intervenors

Amazon.com Services, et al. in support of the Postal Regulatory Commission.

Before: HENDERSON and MILLETT, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: This case involves a petition for review filed by United Parcel Service, Inc. ("UPS"), challenging the Postal Regulatory Commission's ("Commission") Order Adopting Final Rules Relating to the Institutional Cost Contribution Requirement for Competitive Products, No. 4963, Dkt. No. RM2017-1 (P.R.C. Jan. 3, 2019) ("Order"), *reprinted in* Joint Appendix ("J.A.") 515-712. The disputed Order modifies Commission regulations that are meant to "ensure that all [of the Postal Service's] competitive products collectively cover what the Commission determines to be an appropriate share of the institutional costs of the Postal Service." 39 U.S.C. § 3633(a)(3). In making this "appropriate share" determination under § 3633(a)(3), the Commission is obligated to "consider," among other things, "the degree to which any costs are uniquely or disproportionately associated with any competitive products." *Id.* § 3633(b). However, the Commission concluded that "there are no costs uniquely or disproportionately associated with competitive products that are not already attributed to those products under the Commission's current cost attribution methodology" under § 3633(a)(2). Order at 28, J.A. 547.

The problem is that § 3633(a)(2) only requires the Commission to "ensure that each competitive product covers its costs attributable." The term *costs attributable* is narrowly defined as "the direct and indirect postal costs attributable to [a

particular competitive] product through reliably identified causal relationships." 39 U.S.C. § 3631(b). However, it is not at all clear that "uniquely or disproportionately associated" costs described under § 3633(b) include only those costs that are attributable "through reliably identified causal relationships." And § 3633(b) makes it clear that "the Commission shall consider . . . the degree to which *any* costs are uniquely or disproportionately associated with any competitive products." *Id.* § 3633(b) (emphasis added). The Commission's Order fails to explain why these seemingly distinct statutory phrases cover the same costs, and further elides the requirements of § 3633(a)(3) and (b) by suggesting that, to the extent these statutory phrases overlap, the Commission need not consider costs under § 3633(b) if it already accounted for them under § 3633(a)(2).

UPS argues that the Commission's position is contrary to law because "the Order fails to consider . . . costs 'uniquely or disproportionately associated with any competitive products,' as the Act requires in section 3633(b)." Br. for Petitioner at 3. UPS also contends that the Commission erred in simply assuming, without adequate explanation, that "there are no institutional costs uniquely or disproportionately associated with competitive products." *Id.* We agree.

Two aspects of the Commission's Order require a remand. First, the Commission has not adequately explained how the statutory phrases "direct and indirect postal costs attributable to [a particular competitive] product through reliably identified causal relationships" and "costs . . . uniquely or disproportionately associated with any competitive products" can coincide. It is far from clear that these phrases have the same meaning. And the Commission has not demonstrated that, although they have distinct meanings, the phrases nonetheless coincide in application. Second, in focusing on costs attributed

to competitive products under § 3633(a)(2), the Commission failed to discharge its responsibility under § 3633(b) to "consider . . . the degree to which *any* costs are uniquely or disproportionately associated with any competitive products." 39 U.S.C. § 3633(b) (emphasis added). The Commission must consider *any* costs made relevant by § 3633(b). It does not matter whether the Commission has arguably considered such costs in implementing its responsibilities under § 3633(a)(2). These two points are amplified in the opinion below.

The bottom line is that the Commission's Order is arbitrary and capricious because it is "largely incomprehensible" with respect to the matters in issue. *U.S. Postal Serv. v. PRC*, 785 F.3d 740, 753 (D.C. Cir. 2015). Therefore, we are constrained to remand the case for further consideration. On remand, the Commission must adhere to the commands of the statute and address the costs specified in § 3633(b) in determining the "appropriate share" under § 3633(a)(3). Following reconsideration of this case, any Commission Order must be coherent and transparent, and it must satisfy the requirements of reasoned and reasonable decision-making. *Id*. at 744, 753. The present Order fails to meet these standards "because it fails to articulate a comprehensible standard," *id*. at 753, regarding the meaning and application of § 3633(a)(3) and (b).

## I. BACKGROUND

### A.  Statutory Background

The Postal Service offers both "market dominant" and "competitive" products. Market-dominant products, like first-class mail, are "those over which the 'Postal Service exercises sufficient market power that it can effectively' raise prices or decrease quality 'without risk of losing a significant level of business to other firms offering similar products.'" *UPS v.*

*PRC*, 890 F.3d 1053, 1055 (D.C. Cir. 2018) (quoting 39 U.S.C. § 3642(b)(1)); *see also* 39 U.S.C. § 3621 (listing market-dominant products). Competitive products, on the other hand, like priority mail or parcel post, are "products over which the Postal Service faces meaningful market competition" from companies like UPS. *UPS v. PRC*, 890 F.3d at 1056 (internal quotation marks and citation omitted); *see also* 39 U.S.C. § 3631 (listing competitive products).

In 2006, Congress enacted the Postal Accountability and Enhancement Act, Pub. L. No. 109-435, 120 Stat. 3198 (2006) ("Accountability Act"), to ensure (among other things) that the Postal Service offers its competitive products on fair terms. *See* S. REP. NO. 108-318, at 14-16 (2004). To that end, the Accountability Act requires the Commission to promulgate regulations that ensure that the Postal Service is not "using revenues from market-dominant products subject to its monopoly power to defray costs competitive products would otherwise have to be priced to cover." *UPS v. PRC*, 890 F.3d at 1055.

Specifically, § 3633(a) requires the Commission to issue three sets of regulations:

(a) In general.—The Postal Regulatory Commission shall, within 18 months after the date of enactment of this section, promulgate (and may from time to time thereafter revise) regulations to—

(1) prohibit the subsidization of competitive products by market-dominant products;

(2) ensure that each competitive product covers its costs attributable; and

(3) ensure that all competitive products collectively cover what the Commission determines to be an appropriate share of the institutional costs of the Postal Service.

39 U.S.C. § 3633(a)(1)-(3). As may be seen, the foregoing provisions refer to "costs attributable" and "institutional costs." These terms are important in our consideration of the issues presented in this case.

As explained in the introduction to this opinion, the Accountability Act defines the term "costs attributable" as "the direct and indirect postal costs attributable to [a particular competitive] product through reliably identified causal relationships." *Id.* § 3631(b). The Commission, in turn, interprets the term "institutional costs" to mean "residual costs" – that is, the Postal Service's total costs minus its costs attributable under § 3633(a)(2). *See UPS v. PRC*, 890 F.3d at 1055-56, 1061-63 (explaining the relationship between "institutional costs" and "costs attributable").

The Accountability Act calls for the Commission to periodically review its "appropriate share" determination under § 3633(a)(3). The statute also specifies that the Commission "shall consider" the following matters when it conducts that review:

(b) Review of minimum contribution.—Five years after the date of enactment of this section, and every 5 years thereafter, the Postal Regulatory Commission shall conduct a review to determine whether the institutional costs contribution requirement under subsection (a)(3) should be retained in its current form, modified, or eliminated. In making its determination, the Commission shall consider all

relevant circumstances, including the prevailing competitive conditions in the market, and the degree to which any costs are uniquely or disproportionately associated with any competitive products.

39 U.S.C § 3633(b).

In effect, then, the Accountability Act requires the Commission to establish a multi-part "price floor" for its competitive products. *See UPS v. PRC*, 890 F.3d at 1055-56. First, the Commission must issue regulations to prevent market-dominant products from subsidizing competitive products. Second, the price of "each competitive product" must be set high enough to cover the "direct and indirect postal costs attributable to such product through reliably identified causal relationships." Third, the Commission must also ensure that "all competitive products collectively" cover what the Commission determines to be an "appropriate share" of the Postal Service's institutional (*i.e.*, unattributed) costs. The Commission, in determining what share is appropriate, "shall consider," among other things, "the degree to which any costs are uniquely or disproportionately associated with any competitive products."

### B. The Commission's 2016 Order Addressing § 3633(a)(2)

In 2016, the Commission issued an Order adopting a new method for calculating costs attributable under § 3633(a)(2). *See* Order Concerning United Parcel Service, Inc.'s Proposed Changes to Postal Service Costing Methodologies (UPS Proposals One, Two, and Three), No. 3506, Dkt. No. RM2016-2 (P.R.C. Sept. 9, 2016) (updated Oct. 19, 2016) ("2016 Order"). UPS challenged this 2016 Order on various grounds. In *UPS v. PRC*, 890 F.3d 1053 (D.C. Cir. 2018), we upheld the

Commission's cost-attribution method as "reasonable and reasonably explained." *Id.* at 1069. Because the court's 2018 decision thoroughly explains the Commission's cost-attribution method, the decision provides important context for the questions at issue in this case.

First, the court's 2018 decision explains several concepts that the Commission uses to sort out the Postal Service's costs. To start, the decision explains that "the Commission distinguishes (albeit necessarily imperfectly) between 'fixed costs,' . . . which remain constant regardless of overall product volume, and 'variable costs,' . . . which vary with the Service's production levels." *Id.* at 1056 (citing 2016 Order at 6). Examples of fixed costs include executive salaries and product-specific fixed costs like advertising. *See id*. In addition, the decision explains that the Commission distinguishes between variable costs that are "volume-variable" – *i.e.,* which vary directly with the marginal cost of the cheapest relevant unit and the total number of units, *id.* at 1057 (citing 2016 Order at 36 n.56) – and variable costs that are not "volume-variable" in this sense, which the Commission calls "inframarginal costs," *id.* at 1058 (citing 2016 Order at 35). The concept of inframarginal costs is not entirely intuitive. The basic idea is that, thanks to economies of scale, marginal costs tend to decrease with volume, and the sum of the differences between the marginal cost of earlier, more expensive units and the marginal cost of the last, cheapest unit is the inframarginal cost. *See id.* at 1057-58; 2016 Order at 35-36.

Second, the court's 2018 decision holds that the Commission's decision to define "institutional costs" as "residual costs" – that is, as any costs not attributed to competitive products through reliably identified causal relationships under § 3633(a)(2) – was based on a permissible reading of the Accountability Act. *UPS v. PRC*, 890 F.3d at

1061-63. An important upshot of the Commission's choice to treat institutional costs as "residual" is that the composition of the Postal Service's institutional costs will (by definition) depend on how attributed costs are calculated. For example, if the Commission were to attribute to each competitive product its product-specific fixed costs and its volume-variable costs – which is what the Commission did until 2016 – then the Postal Service's institutional costs would include all its other fixed costs and all of its inframarginal costs. *See id.* at 1056-58.

Third, the court's 2018 decision upholds the Commission's revised method for attributing costs under § 3633(a)(2). *See id.* at 1066-69. In short, the Commission adopted a method that enables it to attribute product-specific fixed costs, volume-variable costs, and some (but not all) inframarginal costs to each competitive product. *See id.* at 1060. The Commission is able to tie a portion of the Postal Service's inframarginal costs to specific competitive products through "reliably identified causal relationships" by calculating the "costs that would disappear were the Postal Service to stop offering those products for sale." *Id.* at 1055. This "incremental cost" method accounts for not only a "product's share of volume-variable costs, but also the inframarginal costs that would be removed if the product were not to be provided." *Id.* at 1059 (internal quotation marks omitted) (quoting 2016 Order App'x A at 19). In the Commission's view, "because the portion of inframarginal costs included within a product's incremental cost has a causal relationship with that product, the Accountability Act requires the Postal Service to attribute it." *Id.* at 1059-60 (internal quotation marks omitted) (quoting 2016 Order at 55, 61). The court's 2018 decision finds the Commission's position reasonable and reasonably explained. *Id.* at 1069.

Fourth, the court's 2018 decision notes that the Commission's cautious cost-attribution method leaves some of the Postal Service's inframarginal costs unattributed. *See id.* at 1060 ("All other costs, including all remaining inframarginal costs, remain classified as institutional."). Indeed, the decision concludes that the Commission's caution was reasonable, given the Accountability Act's requirement that attributed costs have "reliably identified causal relationships" to competitive products. *See id.* at 1068. For example, the 2018 decision rejects the argument that the Commission's approach was arbitrary and capricious for assuming that competitive products are responsible for only the lowest-cost units associated with a given activity. The decision reasons that "[a]ttributing *more* than this amount . . . necessitates guesswork, and the Commission sensibly concluded that such guesswork was inconsistent with its statutory obligation to base attribution on only 'reliably identified causal relationships.'" *Id.* (quoting 39 U.S.C. § 3631(b)).

It is clear, then, that the court's 2018 decision in *UPS v. PRC* upholding the Commission's cost-attribution method under § 3633(a)(2) leaves open important questions that provide context for understanding and assessing the Commission's § 3633(a)(3) determination in this case. These questions include: Are some of the Postal Service's institutional costs – and especially its unattributed inframarginal costs – still related in some meaningful way to competitive products, even if those costs cannot be attributed under § 3633(a)(2)? And if so – if, for instance, some of those institutional costs are "uniquely or disproportionately associated with competitive products," 39 U.S.C. § 3633(b) – might they need to be accounted for when the Commission issues regulations under another provision of the Accountability Act?

**C. The Commission's Disputed Order in this Case**

On January 3, 2019, the Commission issued the Order modifying its "appropriate share" determination under § 3633(a)(3) that is the subject of the dispute in this case. In the past, the Commission had determined that "all competitive products collectively" must cover at least 5.5% of the Postal Service's institutional costs. *See* Order at 4-5, J.A. 523-24 (summarizing the Commission's 2007 and 2012 orders). In the 2019 Order, however, the Commission decided that the "appropriate share" of the Postal Service's institutional costs to be covered by "all competitive products collectively" should be set using a dynamic formula. In short, the Commission's formula relies on two primary variables: the "Competitive Contribution Margin" and the "Competitive Growth Differential." These variables are meant to represent the Postal Service's market power and market position. *See id.* at 19-28, J.A. 538-47. The Commission intends to use the formula "to annually update the appropriate share based on prevailing competitive conditions in the market and other relevant circumstances." *Id.* at 19, J.A. 538.

For our purposes, however, the details of the Commission's formula-based approach are not critical. Instead, our focus in this case is on whether the Commission, in making its determination, adequately discharged its obligation under § 3633(b) to "consider all relevant circumstances, including the prevailing competitive conditions in the market, and the degree to which any costs are uniquely or disproportionately associated with any competitive products." Therefore, this background section is similarly focused on the Commission's § 3633(b) analysis and in particular on the Commission's "consider[ation of] . . . the degree to which any costs are uniquely or disproportionately associated with any competitive products."

In a section of its Order titled "Connection to Section 3633(b) Criteria," the Commission recited the factors that the Accountability Act says it "shall consider," and then explained its position on costs "uniquely or disproportionately associated with" competitive products:

> The Commission has repeatedly found that there are no costs uniquely or disproportionately associated with competitive products that are not already attributed to those products under the Commission's current cost attribution methodology. As a result, the formula-based approach does not separately account for such costs.

Order at 28-29, J.A. 547-48 (citations omitted).

The Commission's conclusion draws on its analysis in earlier notices in the same docket. *See* Notice of Proposed Rulemaking to Evaluate the Institutional Cost Contribution Requirement for Competitive Products, No. 4402, Dkt. No. RM2017-1 (P.R.C. Feb. 8, 2018) ("Initial Notice"); Revised Notice of Proposed Rulemaking, No. 4742, Dkt. No. RM2017-1 (P.R.C. Aug. 7, 2018) ("Revised Notice"). In its Initial Notice, for instance, the Commission offered an explanation of its thinking:

> The Commission finds that there are no costs uniquely or disproportionately associated with competitive products that are not already attributed to competitive products. Under the Commission's methodology, any cost that is uniquely or disproportionately associated with any competitive product is identified as an attributable cost because it exhibits a reliably identifiable causal relationship with

a specific competitive product. With regard to costs that are disproportionately associated with competitive products, the Commission's cost attribution methodology identifies relationships between costs and cost drivers, which include mail characteristics such as weight and shape (*e.g.*, letters or parcels). . . . In this way, the costs attributed to products reflect any disproportionate association of those costs with any specific products (including any competitive products).

Under the Commission's methodology, the Commission also classifies any cost that is uniquely associated with any product (including any competitive product) as attributable to that product. These costs are often referred to as product-specific costs. For example, advertisements for a specific product and supplies for money orders are unique costs attributed to specific products under the Commission's methodology.

. . . .

For the reasons discussed above, the Commission concludes that its costing methodology already accounts for the "the degree to which any costs are uniquely or disproportionately associated with any competitive products." To the extent that any costs can be attributed to specific competitive products, they are already distributed under the Commission's current costing methodology and are not included in the institutional costs of the Postal Service.

Initial Notice at 43-45, J.A. 147-49; *see also* Revised Notice at 52-53, J.A. 304-05 (summarizing this same point).

Later, in response to comments from UPS and others, the Commission provided a succinct summary of the position it took in its Initial Notice. *See* Order at 138-162, J.A. 657-81.

> In [the Initial Notice], the Commission found that there are no costs uniquely or disproportionately associated with competitive products that are not already attributed to those products. This is because all costs that are uniquely or disproportionately associated with competitive products exhibit a reliably identified causal relationship with a specific competitive product or group of products and are therefore attributed. The Commission described "unique" costs as product-specific costs and determined that any cost that is uniquely associated with a competitive product is attributed to that product through a reliably identified causal relationship. . . . In addition, the Commission found that any cost disproportionately associated with a competitive product is attributed to that product through the cost methodology's use of cost drivers. . . . In this way, the costs attributed products reflect any disproportionate association of those costs with specific products. As a result, the Commission determined that both types of costs are attributed to the competitive products that cause them.

Order at 138-39, J.A. 657-58 (citing Initial Notice at 43-44).

Finally, in response to UPS's comment suggesting that the Commission's analysis mistakenly conflates the "associated with" standard and the "reliably identified causal relationships" standard, the Commission concluded that "UPS overlooks key terms in section 3633(b), as well as the context of the statutory

scheme as a whole." Order at 143, J.A. 662. The Commission emphasized the "degree of flexibility . . . inherent in the appropriate share provisions of section 3633" and the lack of any mechanical relationship between the Commission's consideration of the statutory factors and the Commission's ultimate determination. *Id*. at 144, J.A. 663. The Commission continued:

> For the relevant factor at issue, "the degree to which any costs are uniquely or disproportionately associated with any competitive products," UPS focuses on only a portion of the statutory language—"disproportionately associated." However, in reading the relevant factor in its entirety, the use of the words "degree" and "any" plainly contemplate that there may be no uniquely or disproportionately associated competitive product costs. Congress does not require costs to be found; only for the Commission to "consider" whether "any" exist. Nothing in section 3633(b) prevents the Commission from concluding as it has—that all costs uniquely or disproportionately associated with competitive products are, in fact, captured by the costing methodology it currently employs pursuant to section 3633(a)(2).

Order at 144, J.A. 663.

In short, the Commission's position appears to be that the statutory phrase "costs . . . uniquely or disproportionately associated with any competitive products" is no broader than the phrase "direct and indirect postal costs attributable to [a particular competitive] product through reliably identified causal relationships." And the Commission appears to base that conclusion on the assumption that costs are uniquely or

disproportionately associated with competitive products only if competitive products can be reliably said to cause such costs.

## II. ANALYSIS

### A. Standard of Review

"'Because the Congress expressly delegated to the Commission responsibility to implement [the Accountability Act], we review its interpretation' of that statute under the standards enunciated in *Chevron* and its progeny." *U.S. Postal Serv. v. PRC*, 785 F.3d 740, 750 (D.C. Cir. 2015) (quoting *U.S. Postal Serv. v. PRC*, 640 F.3d 1263, 1266 (D.C. Cir. 2011)).

> Under *Chevron*'s First Step, if "Congress has directly spoken to the precise question at issue . . ., that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." If the statute is ambiguous, *Chevron*'s Second Step then requires us to consider whether the Commission has acted pursuant to delegated authority and, if so, whether its interpretation of the statute is "permissible."

*U.S. Postal Serv. v. PRC*, 785 F.3d at 750 (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842-43 (1984)). "Even if the statute is ambiguous and does not foreclose the Commission's interpretation, however, the Commission's exercise of its authority must be 'reasonable and reasonably explained' in order to survive arbitrary and capricious review under the Administrative Procedure Act. *Mfrs. Ry. Co. v. Surface Transp. Bd.*, 676 F.3d 1094, 1096 (D.C. Cir. 2012)." *Id*.; *see also* 39 U.S.C. § 3663 (incorporating APA review under 5 U.S.C. § 706).

In deciding whether the Commission's Order is arbitrary and capricious, we are "reluctan[t] to interfere with [the Commission's] reasoned judgments about technical questions within its area of expertise." *UPS v. PRC*, 890 F.3d 1053, 1066 (D.C. Cir. 2018) (internal quotation marks omitted) (quoting *All. of Nonprofit Mailers v. PRC*, 790 F.3d 186, 197 (D.C. Cir. 2015)). At the same time, the Commission must adequately "consider" all the factors that the Accountability Act makes relevant, *see Lindeen v. SEC*, 825 F.3d 646, 657 (D.C. Cir. 2016), and the Commission's decision-making must be comprehensible, *see U.S. Postal Serv. v. PRC*, 785 F.3d 740, 753 (D.C. Cir. 2015); *Glob. Tel\*Link v. FCC*, 866 F.3d 397, 413 (D.C. Cir. 2017).

## B. The Commission's Disputed Interpretation and Application of § 3633(a)(3)

The dispositive question before the court in this case is whether the Commission, in reviewing its appropriate share determination, adequately discharged its statutory obligation to "consider" the "degree to which any costs are uniquely or disproportionately associated with any competitive products." We hold that the Commission failed to do this and, therefore, we are constrained to remand the case.

We do not mean to render any decision on what the appropriate share determination under § 3633(a)(3) should be. That is for the Commission to determine in the first instance. At this point, however, the Commission's interpretation and application of § 3633(a)(3) and (b) are incomprehensible and, thus, unreasonable. No deference is due to the Commission's current position because the disputed Order fails to apply the relevant terms of the statute, and it offers no reasoned basis for this failure.

As detailed above, the Commission's position appears to be that the term "costs . . . uniquely or disproportionately associated with any competitive products" in § 3633(b) is no broader than – and indeed may coincide with – the term "direct and indirect postal costs attributable to [a particular competitive] product through reliably identified causal relationships," which defines "costs attributable" in § 3633(a)(2). To reach that conclusion, the Commission assumed that "all costs that are uniquely or disproportionately associated with competitive products exhibit a reliably identified causal relationship with a specific competitive product or group of products and are therefore attributed." Order at 138, J.A. 657. The Commission thus reasons that none of the Postal Service's institutional costs – including, apparently, its "remaining inframarginal costs," *UPS v. PRC*, 890 F.3d at 1060 – are uniquely or disproportionately associated with its competitive products in the sense intended in § 3633(b). This leads the Commission to conclude that there are no costs for it to "consider" under § 3633(b). *See, e.g.*, Order at 28-29, J.A. 547-48. The Commission's analysis defies reasoned decision-making.

As noted at the outset of this opinion, there are two significant problems with the Commission's position. First, the Commission has not adequately explained how the statutory phrases "direct and indirect postal costs attributable to [a particular competitive] product through reliably identified causal relationships," 39 U.S.C. § 3631(b), and "costs . . . uniquely or disproportionately associated with any competitive products," *id.* § 3633(b), can effectively coincide. Second, in focusing narrowly on costs attributed to competitive products under § 3633(a)(2), the Commission failed to discharge its responsibility under § 3633(b) to "consider . . . the degree to which *any* costs are uniquely or disproportionately associated

with any competitive products." *Id.* § 3633(b) (emphasis added). We elaborate on these points in turn.

1. *The Commission's Interpretation of Costs "Uniquely or Disproportionately Associated with Competitive Products" Under § 3633(b)*

The Commission's current analysis of the relationship between costs "attributed through reliably identified causal relationships" and costs "uniquely or disproportionately associated with" is incomprehensible. In the passages from the Commission's Order reprinted above, the Commission assumes that the Postal Service's costs can be "uniquely or disproportionately associated with" competitive products only if there is a reliably identified causal relationship between those costs and competitive products. *See* Initial Notice at 43-44, J.A. 147-48; Order at 138-39, 657-58. In its brief to this court and at oral argument, however, the Commission's counsel suggests that the Commission gave the phrase "uniquely or disproportionately associated with" a distinct interpretation, and only then proceeded to conclude that there are no costs in that independent category that are not already attributed to competitive products under § 3633(a)(2). *See* Br. for Respondent at 29-32; Tr. of Oral Argument at 54-55. It is an understatement to say that one is hard-pressed to understand what the Commission means to say regarding the meaning of § 3633(b).

At this point, we cannot credit either one of the foregoing interpretations of the Accountability Act. To start, the Commission cannot simply *assume* that the "uniquely or disproportionately associated with" standard is subsumed by the "reliably identified causal relationships" standard. That would impermissibly conflate the language of § 3633(a)(2) – which incorporates the definition of "costs attributed" from

§ 3631(b) – with the evidently distinct language of § 3633(b). *See BP Energy Co. v. FERC*, 828 F.3d 959, 968 (D.C. Cir. 2016) ("Even under the most deferential standard, an agency cannot read statutory provisions out of existence but must interpret statutes 'so that effect is given to all its provisions . . . [and] no part will be inoperative or superfluous, void or insignificant.'" (alteration in original) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009))). Instead, the Commission must explain why these two statutory phrases have the same practical reach despite the use of different language.

As noted above, the Commission attempted to offer such an explanation in its brief to this court. The Commission belatedly argues that it did not "equate[]" the two statutory phrases "as an interpretative matter." Br. for Respondent at 34. Rather, the Commission now contends that it gave independent meaning to the statutory terms "uniquely . . . associated with" and "disproportionately associated with," using the ordinary tools of statutory interpretation. *See id.* at 29-34; Tr. of Oral Argument at 54-55. Then, according to counsel, the Commission concluded that "all 'uniquely associated' costs and all 'disproportionately associated' costs satisfy the Commission's independent definition of the 'costs attributable' to a competitive product." Br. for Respondent at 31. This line of argument is hard to discern in what the Commission actually said, and it is somewhat hard to fathom on its own terms. But if that is the Commission's view, it must spell it out.

In any event, as things stand now, "we simply cannot comprehend the [Commission's] reasoning" about the meaning and application of § 3633(b). *Glob. Tel\*Link v. FCC*, 866 F.3d 397, 413 (D.C. Cir. 2017). Therefore, the Commission's Order is neither reasoned nor reasonable. "At its core, the Commission's Order is arbitrary and capricious because it fails

to articulate a comprehensible standard . . . ." *U.S. Postal Serv. v. PRC*, 785 F.3d 740, 753 (D.C. Cir. 2015). "[W]e owe no deference to an agency determination that is 'largely incomprehensible.'" *Id.* (quoting *Coburn v. McHugh*, 679 F.3d 924, 926 (D.C. Cir. 2012)). The bottom line is that the Commission has not adequately explained why the statutory phrases at issue here have similar meanings, nor has it demonstrated that these statutory categories, even if distinct in meaning, nevertheless coincide in application. Therefore, the Commission's application of § 3633(a)(3) and (b) was arbitrary and capricious and must be remanded.

### 2. The Commission's Consideration of "Any" Such Costs Under § 3633(b)

A second problem with the disputed Order is that, in focusing its analysis on costs attributed to competitive products under 39 U.S.C. § 3633(a)(2), the Commission failed to "consider . . . the degree to which any costs are uniquely or disproportionately associated with any competitive products" as required by 39 U.S.C. § 3633(b). As the plain meaning of that provision suggests, the Accountability Act clearly requires the Commission to consider *any* costs uniquely or disproportionately associated with competitive products at the time it reviews its appropriate share determination under § 3633(a)(3). This includes, but is not limited to, any costs fitting that description that the Commission may have already considered when it promulgated regulations under § 3633(a)(1) or § 3633(a)(2).

The record in this case indicates that the Commission did not follow this statutory mandate. Instead, the Commission, relying on its inadequately explained interpretation of the Accountability Act, focused narrowly on the costs it had considered – and attributed – in promulgating regulations under

§ 3633(a)(2). At oral argument, counsel for the Commission suggested that by piecing together the Commission's responses to various comments, we could find that the Commission did indeed consider a broader class of costs. Tr. of Oral Argument at 75; *see also* Br. for Respondent at 35-38. Even assuming that is right, however, the Commission's Order does not make it clear or comprehensible, and we cannot fill in the blanks in the Commission's reasoning. The simple point here is that the Commission erred in concluding that it had discharged its responsibility to consider *any* costs uniquely or disproportionately associated with competitive products by virtue of the fact that it had already considered these costs when setting the price floor under § 3633(a)(2).

An agency Order that is at odds with the requirements of the applicable statute cannot survive judicial review. *See, e.g.*, *Michigan v. EPA*, 135 S. Ct. 2699, 2706 (2015). "An agency's failure to consider and address during rulemaking 'an important aspect of the problem' renders its decision arbitrary and capricious. A 'statutorily mandated factor, by definition, is an important aspect of any issue before an administrative agency . . . .'" *Mozilla Corp. v. FCC*, 940 F.3d 1, 60 (D.C. Cir. 2019) (per curiam) (first quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983); then quoting *Pub. Citizen v. Fed. Motor Carrier Safety Admin.*, 374 F.3d 1209, 1216 (D.C. Cir. 2004)). On the record before us, the Commission's treatment of § 3633(b) cannot survive judicial review. Therefore, we are constrained to remand the Order to the Commission for further consideration.

On remand, the Commission must consider all costs uniquely or disproportionately associated with competitive products in setting the appropriate share, even if it has already accounted for those costs under § 3633(a)(1) and (a)(2).

Furthermore, the Commission should fully address the issue left open in the court's 2018 decision in *UPS v. PRC*. The court in that decision recognized that, because the costs attributed test under § 3633(a)(2) is conservative, there may be institutional costs that are "uniquely or disproportionately associated with competitive products," even though they cannot be said to stand in "reliably identified causal relationships" with them. The Commission's Order in this case does not address this.

In addition, the Commission must explain the relevance (if any) of costs it may have considered in implementing § 3633(a)(1). At oral argument, counsel for the Commission suggested that the Commission might not have to further consider costs uniquely or disproportionately associated with competitive products under § 3633(b) because it had already considered them pursuant to § 3633(a)(1). Tr. of Oral Argument at 43-44, 48, 54-55. However, this possibility is offered as nothing more than a fleeting suggestion in the Commission's Order and its brief to the court. *Compare* Order at 144, J.A. 663, and Br. for Respondent at 19 (focusing only on § 3633(a)(2)), *with* Order at 160 n.294, J.A. 679 n.294, and Br. for Respondent at 36 (mentioning the Commission's test under § 3633(a)(1)). If this point is somehow critical to the Commission's analysis, the Commission must make that clear in the first instance. *See SEC v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943).

We do not mean for these examples to exhaust the issues that the Commission must address on remand, only to illustrate some of what a fuller "consider[ation]" of the relevant costs will involve.

\* \* \*

In sum, the Commission must address the issues highlighted above before we can say whether its formula-based approach to determining the appropriate share under § 3633(a)(3) is permissible and reasonable. On remand, the Commission might decide to revise its judgment regarding the "appropriate share" under § 3633(a)(3). Indeed, at oral argument, counsel for the Commission conceded that the "floor" established under § 3633(a)(3) might need to be adjusted if the Commission found any costs uniquely or disproportionately associated with competitive products. Tr. of Oral Argument at 49-50. It is also possible, however, that the Commission might decide against revising its bottom-line judgment, given the other factors the Commission must consider under § 3633(b) and the latitude that the text affords the Commission in making a final determination.

We take no position on this matter. It is not for this court to say that the Commission must account for costs in any specific way under § 3633(b) or that the Commission must make any particular "appropriate share" determination under § 3633(a)(3). Rather, the judgment of the court is that, on remand, the Commission must consider all the costs referenced under § 3633(b), as the Accountability Act clearly commands. And any decision that the Commission reaches regarding the meaning and application of § 3633(b) in connection with the "appropriate share" determination under § 3633(a)(3) must be consistent with the terms of the statute, must be comprehensible, and must otherwise satisfy the requirements of reasoned decision-making.

## III. CONCLUSION

For the reasons set forth above, we grant UPS's petition for review and remand the case to the Commission for further consideration consistent with this opinion.