# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

─────────

Argued December 5, 2023      Decided March 22, 2024

No. 23-1006

UNITED PARCEL SERVICE, INC.,
PETITIONER

v.

POSTAL REGULATORY COMMISSION,
RESPONDENT

AMAZON.COM SERVICES, LLC, ET AL.,
INTERVENORS

─────────

On Petition for Review of an Order
of the Postal Regulatory Commission

─────────

*Kathleen M. Sullivan* argued the cause for petitioner. On the briefs were *David M. Cooper* and *Steig D. Olson*.

*Michael Shih*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Michael S. Raab* and *Kevin J. Kennedy*, Attorneys, *David A. Trissell*, General Counsel, Postal Regulatory Commission, *Lauren A. D'Agostino*, Deputy General Counsel, and *Reese T. Boone*, Attorney.

*John Longstreth* argued the cause for respondent-intervenors. With him on the brief were *Eric P. Koetting* and *Morgan E. Rehrig*, Attorneys, U.S. Postal Service, and *Michael F. Scanlon*.

Before: SRINIVASAN, *Chief Judge*, GARCIA, *Circuit Judge*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: The Postal Regulatory Commission determines an "appropriate share" of the Postal Service's institutional costs to be covered by the Service's "competitive" products, such as package delivery. 39 U.S.C § 3633(a)(3), (b). In 2020, the court remanded the Commission's Order adopting a formula for the appropriate share, with instructions to better explain its reasoning in accounting for certain statutory cost categories. *United Parcel Serv., Inc. v. Postal Regul. Comm'n* ("*UPS II*"), 955 F.3d 1038 (D.C. Cir. 2020). On remand, the Commission revised its analysis while readopting the same "dynamic formula[.]" Order No. 6399, Dkt. Nos. RM2017-1, RM2022-2 (Jan. 9, 2023) ("2023 Order") at 2. Upon review of this Order, the court concludes that the Commission adequately addressed the issues identified in *UPS II* and reasonably exercised its statutory discretion in adopting the appropriate share formula. The court therefore denies United Parcel Service's ("UPS") petition for review.

**I**.

The background to this appeal is set forth in *UPS II* and *United Parcel Service Inc. v. Postal Regulatory Commission* ("*UPS I*"), 890 F.3d 1053 (D.C. Cir. 2018). The Postal Accountability and Enhancement Act ("Act"), Pub. L. No. 109-

435, 120 Stat. 3198 (2006), divides the Service's products between "market dominant" products like standard mail, where the Service holds a near monopoly, and "competitive" products, like package delivery where the Service competes with private companies like UPS. *UPS I*, 890 F.3d at 1055–56. The Commission allocates the Service's costs "attributable" to a particular product as "direct and indirect [] costs" identified "through reliably identified causal relationships." 39 U.S.C. § 3631(b). All other "residual" costs are classified as "institutional costs." *UPS I*, 890 F.3d at 1055–56. The court upheld as reasonable in *UPS I*, *id.* at 1069, the Commission's current methodology for identifying "attributable" costs.

In ratemaking, the Commission's competitive products must cover both their "attributable" costs plus an "appropriate share" of the Service's institutional costs. 39 U.S.C. § 3633(a), (b). The Commission, in setting an "appropriate share" figure must "consider" certain factors, including "the degree to which any costs are uniquely or disproportionately associated with any competitive products." *Id.* § 3633(b). The court in *UPS II*, 955 F.3d at 1041–42, remanded the Commission's last attempt with instructions to explain more thoroughly two conclusions. *First*, how 39 U.S.C. § 3631(b)'s definition of costs attributable to" competitive products "through reliably identified causal relationships" and Section 3633(b)'s category of costs "uniquely or disproportionately associated with competitive products" either "have similar meanings" or could otherwise "coincide in application," despite being "distinct in meaning." *Id.* at 1050. *Second*, the court instructed the Commission to evaluate the relevance of "*any* costs" fitting Section 3633(b)'s description, including "attributable costs" that the Commission may have "already accounted for" in promulgating separate anti-subsidization regulations under Section 3633(a)(1) – (2). *Id.* at 1050–51.

## II.

*Definition of costs "uniquely or disproportionately associated with competitive products."* On remand, the Commission recognized a textual distinction between Section 3631(b) and Section 3633(b)'s cost groups, *see* 2023 Order at 8–11, 77–78, and explained that the two categories were functionally coextensive because there was "no way to determine which portion of institutional costs" relate to competitive products. *Id.* at 79. The Commission defined costs "uniquely or disproportionately associated" with competitive products, 39 U.S.C. § 3631(b), as those costs that can be linked through "economically sound" relationships. 2023 Order at 105. Because the Commission's cost-attribution model reaches the "outer limits of all costs that can be linked . . . in any way using existing costing methodologies," the Commission explained that it has already treated as "attributable" any cost that exhibits an economically sound relationship to any product. 2023 Order at 61. Thus, by "their *very* nature," *id.* at 100, none of the Service's remaining institutional costs possess an "economically sound" connection to competitive products. *Id.* at 236–37. The Commission confirmed, by "review[ing] all the Postal Service's accrued costs," that no non-attributed institutional costs exhibited any such connections. *Id.* at 60.

This approach comports with the Act and *UPS II*, 955 F.3d at 1051, where the court contemplated that the Commission might "decide against revising its bottom-line judgment" given "the latitude that the [statute] affords the Commission in making a final determination." Section 3633(b) requires the Commission to analyze costs bearing a "unique[] or disproportionate[]" relationship with competitive products, what the court characterized in *UPS II* as costs "related in some *meaningful* way" to competitive products. *Id.* at 1045

(emphasis added).  The Commission's decision to interpret the text as requiring an association that can be established in an "economically sound" manner reflects a reasonable construction of ambiguous statutory phrasing.  *See. id.* at 1047–48 (applying the two-step framework of *Chevron, USA, Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984)).  The Commission's interpretation fits within the definitional space *UPS II*, 955 F.3d at 1048–49, identified in Section 3633, which describes a cost category that is both broader than Section 3631(b)'s conservative and causally limited test for "attributable" costs, yet rigorous enough to encompass only those costs exhibiting a "*unique*[]" and *disproportionate*[]" relationship to competitive products.  39 U.S.C. § 3633(b) (emphasis added).

UPS, although maintaining that the Commission's interpretation is "obviously different" from Section 3633(b) and the interpretive gloss in *UPS II*, Pet. Br. 25; Reply Br. 5, fails to point to a textual or structural conflict with the statutory terms.  UPS instead focuses on the Commission's application of the "economically sound" test.  It objects that the Commission's failure to identify any costs satisfying the standard, beyond those already classified as "attributable," evinces that the Commission's interpretation is merely a "sleight-of-hand" and impermissibly conflated the definition in Section 3633(b) with Section 3631(b)'s narrower standard. Pet. Br. 25–27.  But, as the court observed in *UPS II*, if substantiated, there is nothing intrinsically flawed with the notion that the two cost categories, "even if distinct in meaning," might "nevertheless coincide in application."  955 F.3d at 1050–51.

UPS contends that there is a meaningful relationship between institutional costs and competitive products.  But the Commission has offered a detailed explanation why the specific cost categories UPS highlights — most notably peak-

season costs, delivery vehicle costs, city carrier assistant costs, and package-scanning equipment costs — either lack any "economically sound" connection with competitive products or are already treated as "attributable" costs. 2023 Order at 177–218. For example, the Service has hired thousands of "city carrier assistants" not because of increased competitive products volumes as UPS proposed in its comments, *see* UPS Initial Comments on Supplemental Notice of Proposed Rulemaking (Feb. 25, 2022) at 23, but rather due to broader changes to the Service's staffing model across products. 2023 Order at 200–02. In any event, the Commission's cost attribution model already captures the specific proportion of these employees' time spent on competitive products and attributes them accordingly. *Id.* at 202. The Commission's analysis of the other cost categories identified by UPS is similarly persuasive. *See id.* at 179–218.

UPS' challenge to this analysis fails to undermine the Commission's conclusion that, in practice, the only costs exhibiting an "economically sound" link to competitive products are already treated as "attributable" costs. *Cf.* Pet. Br. 27–35. UPS has not pointed to specific errors in the Commission's analysis, "nor adduced any data or studies that [it] overlooked." *In re Polar Bear Endangered Species Act Listing & Section 4(d) Rule Litig.*, 709 F.3d 1, 3 (D.C. Cir. 2013). Instead, UPS suggests that the Commission was required to construct and exhaust an unspecified set of novel econometric tests before it could reasonably conclude that it lacked any way of identifying further "economically sound" relationships to competitive products within the Service's institutional costs. Reply Br. 6–10.

The Commission, however, engaged with UPS' proposed regression approach, identifying it as technically flawed and in conflict with the broader statutory regime. 2023 Order at 256–

65; *see id*. at 237–238. As noted, the Commission explained why each of the institutional cost categories identified by UPS did not include any costs exhibiting an "economically sound" connection to competitive products. *Id.* at 177–218. The Commission relied on expert econometric evidence in the record, *see, e.g.*, *id.* at 26, 44, 92, 256–65, and its expert understanding of the Postal Service's costs and operations. This suffices to demonstrate reasoned decision-making. Contrary to UPS' reply, *see* Reply Br. 9, there is no statutory or administrative requirement that the Commission construct an elaborate econometric model before reaching an otherwise reasonable conclusion. *Accord FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 520 (2009).

***Consideration of "Attributable" Costs.*** Consistent with Section 3633(b) and *UPS II*, 955 F.3d at 1051, the Commission has adequately "considered" the relevance of "attributable" costs and reasonably declined to include them directly in the appropriate share. Because the price floors of Section 3633(a)(1) – (2) already require competitive products to cover attributable costs, the Commission explained that they were only "indirectly relevant" in determining the appropriate share. 2023 Order at 78. Its proposed formula takes "attributable" costs into account as part of the calculation for one of the formula's variables (the competitive products margin). *Id.* The Commission's choice not to require a more direct tie between "attributable" costs and the appropriate share was reasonable. Because the anti-subsidization limitations of Section 3633(a)(1) – (2) already require the Service to include these costs, the Commission concluded that requiring the Service to cover them again in the appropriate share would "essentially double-count" them in a way that would be "unnecessary, economically unsound," and "harmful to the Postal Service" and its competitive position. *Id.* at 77–78, 94–95.

As an alternative, the Commission considered whether to set the appropriate share equal to the percentage of total "attributable" costs allocable to competitive products. *Cf.* Pet. Br. 56–58. The Commission declined to do so because such a "mechanical" approach would neglect other relevant statutory and prudential factors, including the Service's "market power [and] the size of the overall parcel delivery market." 2023 Order at 230. Apportioning institutional costs based on "attributable" cost allocation, it further reasoned, would also represent a form of "fully distributed costing," which the Commission has consistently rejected as inconsistent with the statutory scheme and its own policy priorities. *Id.* at 237; *see* Order No. 6043, Dkt. Nos. RM2017-1, RM2022-2 (Nov. 18, 2021) at 85.

UPS objects that the Commission failed to "consider" adequately these costs because its proposed formula does not include any discrete reference to "attributable" costs. Pet. Br. 36–37. But, as acknowledged in *UPS II*, 955 F.3d at 1051, "it is not for this court to say that the Commission must account for costs in any specific way under § 3633(b)," and UPS appears to be "conflat[ing] the word 'consider' with the word 'include.'" Resp. Br. 49. The Commission considered several alternatives for directly including various measures of "attributable" costs in the appropriate share, including those advanced by UPS. 2023 Order at 229–39. It declined to adopt those measures upon concluding that they would result in harmful and unnecessary double-counting, neglect other important factors, or would be inconsistent with the broader statutory scheme. *Id.* UPS has not shown that Congress' directive for the Commission to "consider" these costs requires more.

***Implicit Break-Even Requirement.*** Contrary to UPS, Pet. Br. 39–44, the Commission need not endeavor to allocate all

the Service's institutional costs between market dominant and competitive products. From 1970–2006, the Service was subject to a "break-even" cost coverage requirement so annual revenues had to equal costs. 39 U.S.C. § 3621 (2001). Congress repealed this requirement in the Act. *See* 2023 Order at 37–38, 40–42. UPS' position that the Act still implicitly requires the Commission to allocate all the Service's costs is unpersuasive.

UPS relies on Section 3622(b)(9)'s direction that the Commission "allocate the total institutional costs of the Postal Service appropriately between market-dominant and competitive products." *See* Pet. Br. 40. The Commission explained that provision relates only to market-dominant products ratemaking — not competitive products or the appropriate share. *See* 2023 Order at 53. Even within the market-dominant products ratemaking framework, UPS overlooks that this phrasing represents one of nine objectives and fourteen factors that the Commission must weigh, *Nat'l Postal Pol'y Council v. Postal Regul. Comm'n*, 17 F.4th 1184, 1187–88 (D.C. Cir. 2021), in a "multi-factor balancing test," *id*. at 1193 (citation and internal quotation marks omitted).

Furthermore, UPS' view is inconsistent with the structure of Section 3633(b), which permits the Commission to "eliminate[]" the appropriate share contribution altogether. Such authority cannot be squared with a total cost allocation principle. Resp. Br. 60–61. UPS finds a total cost coverage requirement in Section 3633's purpose of preventing improper subsidization of the Service's competitive products. Pet. Br. 42–43. The Commission explained that Section 3633(a)(1) – (2)'s price floors already require competitive products to cover "attributable" costs, preventing subsidization under the Commission's longstanding test. 2023 Order at 50; *see* Order No. 3506, at 10–12, Dkt. No. RM2016-2 (Sept. 9, 2016). UPS

does not contest the reasonableness of this definition of unlawful subsidization.

*Evaluation of Competitive Conditions.* Likewise, the Commission adequately considered competitive products market conditions as required by Section 3633(b), concluding that the market was healthy based on robust volume and price growth across the Service and its private counterparts. 2023 Order at 137. UPS maintains that the Service's perennial financial losses reflect systematic underpricing of its competitive products. Pet. Br. 47–49. The Commission explained that the Service's losses stem from other causes, including volume declines in its price-capped market dominant products and the funding of its healthcare benefits and pension obligations. 2023 Order at 144–45, 151–52.

UPS' questioning of the 2023 Order's reliance on a 2007 FTC report, Pet. Br. 48, is without merit. The Commission is required to consider the report, 39 U.S.C. § 3633 note, and recognizing the report's age, adequately contextualized its probative value in view of more recent evidence. 2023 Order at 176–77. The Commission did not rely on the report in reaching any of its conclusions. *Id.*

*The Proposed Formula.* UPS fails to show that the Commission's proposed formula for setting the appropriate share is substantively unreasonable. The formula is highly technical, *see* 2023 Order at 113–21, 154–65, but designed to measure competitive products' "capacity to contribute to institutional costs [] based on changes in the Postal Service's market power and market position[]" and to "reflect the cumulative effect of developments" in the competitive products market "since the [Act's] enactment." *Id.* at 157–58. It does so by setting a starting appropriate share of 5.5% of the Service's institutional costs and then adjusting that value based

on year-over-year changes across variables that collectively "account[] for the prevailing competitive conditions in the market and other relevant circumstances [] historically considered qualitatively when evaluating the appropriate share requirement." *Id.* at 14; *see* Order No. 4963, Dkt. No. RM2017-1 (Jan. 3, 2019) ("2019 Order") at 20.

UPS disagrees with the Commission's weighting and choice of variables. Pet. Br. 53–56. But the court, recognizing that "Congress vested postal ratemaking authority in the Commission out of a desire to harness the educated and politically insulated discretion of experts," has been "reluctan[t] to interfere" with the Commission's "judgments about technical questions'' related to postal costing and ratemaking. *UPS I*, 890 F.3d at 1066 (internal quotations and citations omitted). The Commission explained the aim of its formula and how its selection of variables reflected statutory and prudential considerations related to the appropriate share. *See* 2023 Order at 113–121; 2019 Order at 20–27. This demonstrates reasoned decision-making, and the court properly declines to "substitute its judgment for that of the [Commission]" on the policy-laden intricacies of formula design. *Fox Television Stations*, 556 U.S. at 513 (internal citation omitted).

UPS also challenges the formula's 5.5% start value. Pet. Br. 52–53. This value has been the fixed appropriate share contribution since 2007 and, as explained, serves as the formula's baseline, before its year-over-year variables capture changes in the Service's costs and competitive position over time. 2019 Order at 27; 2023 Order at 139. Because this figure was initially based on competitive products' actual contribution to institutional costs in 2007, UPS maintains that reliance on an outdated figure arbitrarily ignores significant intervening shifts in the Service's operations and parcel

delivery market share. Pet. Br. 52–53. Yet the 5.5% value reflects the appropriate share requirement that the Service has been subject to since 2007 and represents a reasonable baseline for a formula seeking to capture prospective changes. In that sense, it is hardly the random or hopelessly outdated figure UPS characterizes it to be. *Id.* UPS may prefer a baseline using the Service's current market share and operations, but the Commission's choice is within its considerable discretion.

In sum, the Commission's action on remand was "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). The Commission addressed the court's concerns in *UPS II* and offered discernable and detailed explanations for its conclusions. *Cf. UPS II*, 955 F.3d at 1050–51. Its choices in rejecting UPS' challenges appear logical and permissible under the Act. Accordingly, pursuant to arbitrary and capricious review, 39 U.S.C. § 3663; 5 U.S.C. § 706(2)(A), the court denies the petition for review.